# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| MUHAMMAD IMAM, et al.<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Defendants. | Case No. 1:26-MC-00025 |

**Declaration of Lauren Colgan**

I, Lauren Colgan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. U.S. Customs and Border Protection (CBP), a component agency of the U.S. Department of Homeland Security (DHS), is charged with securing our international borders and enhancing our economic prosperity. To achieve this mission, CBP works to combat transnational crime and the flow of illegal narcotics, to detect and disrupt terrorism and cybersecurity threats, to interdict unlawful border crossings and migration, to seize and penalize counterfeit or misclassified commercial goods, all while facilitating lawful trade and travel.

2. The Port of Washington, D.C., is a port of entry and functions as part of the United States' international border with CBP operations at Andrews Air Force Base, Maryland, Ronald Reagan National Airport in Arlington, Virginia, and Washington Dulles International Airport (IAD) in Sterling, Virginia. *See* Treasury Decision 68-67 (Feb. 23, 1968). Upon arrival at a port in the customs territory of the United States, passengers disembarking from an

international flight must declare and make entry. CBP Officers will conduct a border inspection on all arriving individuals seeking to make entry into the United States. A border inspection may include an examination of traveler's documentation, questioning relating to their travel, and a search of their personal effects or property.

3. On October 16, 2026, Mr. Muhammad Imam, a United States citizen, arrived at IAD on a Turkish Airlines flight from Istanbul, Türkiye. Mr. Imam was traveling with his spouse, Ms. Khadijah Mansoor, a Pakistani citizen and United States permanent resident, and with their young child, a United States citizen. Mr. Imam and Ms. Mansoor presented valid, un-expired travel documents to CBP Officers in the primary inspection and were referred for secondary inspection.

4. [redacted] During their secondary inspection, Mr. Imam stated the purpose of their travel to Türkiye was to celebrate their wedding anniversary. Mr. Imam stated that upon arrival at Turkish customs, the family (i.e. him, Ms. Mansoor, and their child) was refused entry to the country because Ms. Mansoor was not in possession of her United States Permanent Resident Card, better known as a Green Card.

5. CBP Officers asked Mr. Imam and Ms. Mansoor, each in possession of one iPhone and one laptop computer, to provide the passcodes to their electronic devices, or to

otherwise open their electronic devices, so that the CBP Officers could conduct a search of their respective electronic devices. Mr. Imam and Ms. Mansoor both refused.

6. As defined by CBP policy, a basic search is "[a]ny border search of an electronic device that does not qualify as an advanced search . . . in which an officer conducts a review or analysis of information residing in electronic or digital form on the device." *See* CBP Directive 3340-049B, Border Search of Electronic Devices § 3.3 (Jan. 1, 2026). An advanced search is "[a]ny search in which an officer connects equipment, wired or wireless, to copy and/or analyze the contents of an electronic device." *Id.* at § 3.4. However, "[u]se of external equipment . . . merely to make the contents of the device available for inspection (including for example, to bypass a password, overcome encryption, translate content, view files contained in an external drive or other electronic device lacking a screen, or charge a device) does not constitute an advanced search." *Id.*

7. Because of Mr. Imam's and Ms. Mansoor's refusal to provide access to their electronic devices, CBP informed Mr. Imam and Ms. Mansoor their devices would be detained to continue the border search. Mr. Imam stated to CBP Officers that his iPhone contained sensitive medical information in emails and on a healthcare application. Mr. Imam did not state that any sensitive information existed on his laptop. Mr. Imam, Ms. Mansoor, and their child were subsequently admitted to the United States without further incident.

8. After Mr. Imam's and Ms. Mansoor's admission to the United States and departure from IAD, Mr. Imam's iPhone and laptop computer were referred to DHS headquarters personnel for technical assistance in unlocking the devices. Ms. Mansoor's iPhone and laptop computer were not referred for technical assistance. CBP officers did not access the contents of Ms. Mansoor's devices, and those devices were returned to her via mail

on October 17, 2026, and which she received on October 21, 2026. [redacted]

9. On October 21, 2026, Port Director Christine Waugh, in accordance with CBP policy requiring detention of electronic devices beyond five days to receive appropriate authorization, authorized the continued detention of Mr. Imam's electronic devices. *See* CBP Directive 3340-049B, Border Search of Electronic Devices § 5.4 (Jan. 1, 2026).

10. On October 22, 2026, CBP mailed Mr. Imam his iPhone and laptop via U.S. mail.

11. [redacted]

12. I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this 26th day of October 2026.

Lauren Colgan
Assistant Port Director
Port of Washington, D.C.
U.S. Customs and Border Protection